JAMES A. PARSONS

*vs.*

LEWISTON, BRUNSWICK AND BATH STREET RAILWAY.

Androscoggin.    Opinion July 15, 1902.

*New Trial.   Newly-Discovered Evidence.   Cumulative Evidence.   Discretion
of Court.   R. S., c. 89, § 4.*

In granting a new trial upon motion based on newly-discovered evidence,
the true doctrine is, that the newly-discovered testimony must be of such
character, weight and value, considered in connection with the evidence
already in the case, that it seems to the court probable that on a new trial,
with the additional evidence, the result would be changed; or it must be
made to appear to the court that injustice is likely to be done if the new
trial is refused.

It is not sufficient that there may be a possibility or chance of a different
result, or that a jury might be induced to give a different verdict; there
must be a probability that the verdict would be different upon a new trial.
But it is not necessary that the additional testimony should be such as to
require a different verdict.

If it were true that such new evidence must be of such a character as to
require a different verdict upon a new trial, as stated in *Linscott* v. *Orient
Ins. Co.*, 88 Maine, 497, and *State* v. *Stain*, 82 Maine, 472, then it would follow
as a logical sequence that none but a different verdict would be allowed by
the court to stand.

The rule stated in those two cases is too strict.   It would deprive a party of
the privilege of having his evidence passed upon by a jury, whose peculiar
province it is to decide controverted issues of fact, even in cases where the
court is of opinion that the new evidence would probably change the
result, or that injustice would be likely to be done if a new trial was not
granted.

It is not an absolute and unqualified rule that a new trial will not be granted
under any circumstances upon newly-discovered cumulative evidence.

When the newly-discovered evidence is additional to some already in the
case in support of the same proposition, the probability that such new
evidence would change the result is generally very much lessened, so that
much more evidence, or evidence of much more value, will generally be
required when such evidence is cumulative; but if such newly-discovered
testimony, although merely cumulative, is of such a character as to make

it seem probable to the court that, notwithstanding the same question has already been passed upon by the jury, a different result would be reached upon another trial with the new evidence, then such new trial should be granted.

The provisions of the statute, R. S., c. 89, § 4, applicable to petitions for review, that "newly-discovered cumulative evidence is admissible and shall have the same effect as other newly-discovered evidence" should have some effect upon the value of such testimony upon motions for a new trial; otherwise, a party who had lost a verdict would have greater rights upon a petition for review after judgment than upon a motion for a new trial before.

While it is important to have general rules in regard to granting new trials upon this ground, which may be known to the profession and by which the court will be governed so far as practicable, each case differs so materially from every other, that the decision of the question as to whether or not a new trial should be granted in any particular case must necessarily depend to a very large extent, but of course within the limits of such general rules, upon the sound discretion of the court, which will always be actuated by a desire, upon the one hand, to put an end to litigation when the parties have fairly had their day in court, and, upon the other hand, to prevent the likelihood of any injustice being done.

*Linscott* v. *Orient Ins. Co.*, 88 Maine, 497; and *State* v. *Stain*, 82 Maine, 472, criticised.

Motions by plaintiff. New trial granted.

Case for personal injuries to plaintiff, whose horse became frightened at defendant's rotary snow plow.

There was a general motion for a new trial which was not urged in argument; also a motion on the ground of newly-discovered evidence.

The facts are stated in the opinion.

*E. M. Briggs*, for plaintiff.

*W. H. Newell and W. B. Skelton*, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, PEABODY, JJ.

WISWELL, C. J. While the plaintiff was driving a horse attached to a long covered vehicle on runners across the bridge between the cities of Lewiston and Auburn, in the direction of Auburn, he met the defendant's rotary snow-plow coming towards him from Auburn; his horse became frightened at the appearance of the snow-plow and

the noise caused by it to such an extent as to become unmanageable; finally, the horse bolted towards one side of the bridge, and, after striking that side, started diagonally across the bridge to the other side, the plaintiff in the meantime was thrown out, dragged some distance and sustained severe injuries.

The plaintiff, claiming that the accident was attributable to the negligence of the defendant's employees in the management of the snow-plow, brought this suit to recover the damages sustained by him. The trial resulted in a verdict for the defendant and the plaintiff brings the case here upon two motions for a new trial, one, because the verdict was against the weight of the evidence, the other upon the ground of newly-discovered evidence. The plaintiff's counsel admits in argument that the jury was authorized in finding a verdict for the defendant upon the evidence introduced at the trial, so that it only becomes necessary to consider the second motion and the newly-discovered testimony presented under it, in connection with the case as submitted to the jury.

The contention of the plaintiff at the trial was that his horse showed signs of fright when about one hundred feet distant from the snow-plow as the two were slowly approaching each other; that the fact that his horse was greatly frightened and was becoming unmanageable was so apparent that it should have been seen, and in fact was seen, by the motor-man a sufficient length of time before the horse bolted, for him to have stopped his plow and allow the plaintiff to drive past; that by doing so the accident would have been avoided, but that he failed to stop the snow-plow and that this failure was the proximate cause of the accident resulting in the injury to the plaintiff. The defendant's answer to this proposition is, and was at the trial, that the motor-man did stop his plow as soon as the horse showed any signs of fright. Defendant's counsel in their brief say, "coincident in point of time with the first appearance of real fright on the part of the horse, the motor-man shut off the current, applied the brake, and stopped the plow."

Upon this issue, the plaintiff testified that the snow-plow did not stop until after the accident, and one witness called by him, whose means of observation on account of his distance from the scene of

the accident were not particularly good, to some extent substantiated the plaintiff, stating it as his impression that the snow-plow did not stop.   Upon the other hand, four witnesses called by the defense, all of whom were on the snow-plow at the time, and in the employ of the defendant corporation, and three of whom were still in its employ at the time of the trial, all testified in substance that the motor-man stopped his plow as soon as the horse appeared to be frightened.   A jury certainly would be authorized to find that it was negligence upon the part of those managing the rotary snow-plow, such as this one was described and shown by the photographs to be, to continue its movement along the track, in such a situation as this, when an approaching horse displayed signs of great fright and of becoming unmanageable.   But, upon the other hand, the jury was authorized to find from the testimony in the case that the motor-man seasonably stopped his plow, and did all that he could do to prevent the accident.   So that the important issue of fact at the trial was, as to whether or not the plow was seasonably stopped, in view of the situation.

Since the trial the plaintiff has discovered three additional witnesses who saw the accident and who will testify, with varying degrees of positiveness, that the snow-plow did not stop until after the accident.   These witnesses are entirely disinterested, they had no acquaintance with the plaintiff, their opportunities for seeing what happened were good. 'The testimony of these three witnesses is newly-discovered within the well established rule in this state, its discovery subsequent to the trial was accidental ; and the failure of the plaintiff or his counsel to be earlier aware of its existence cannot be attributed to any negligence upon their part, because diligence upon their part would not have been likely to have put them in possession of it.

The question then is, whether the court, in the exercise of its sound discretion, but within the rules which have been adopted relative to granting new trials upon this ground, should grant a new trial in this case.   But first, inasmuch as there may be some confusion as to what the true doctrine is governing the court in the exercise of its discretion in cases of this kind, growing out of the language

used in two decisions of this court, it may be well to carefully state it.

The true doctrine is, that before the court will grant a new trial upon this ground, the newly-discovered testimony must be of such character, weight and value, considered in connection with the evidence already in the case, that it seems to the court probable that on a new trial, with the additional evidence, the result would be changed; or it must be made to appear to the court that injustice is likely to be done if the new trial is refused. It is not sufficient that there may be a possibility or chance of a different result, or that a jury might be induced to give a different verdict; there must be a probability that the verdict would be different upon a new trial. But it is not necessary that the additional testimony should be such as to *require* a different verdict.

The correct doctrine has been so repeatedly stated by this court, that we quote the language used in numerous earlier decisions relative to the character of the newly-discovered evidence necessary and sufficient to justify the court in granting a new trial upon this ground. "A new trial to permit newly-discovered testimony to be introduced should only be granted . . . . when there is reason to believe that the verdict would have been different if it had been before the jury." *Handly* v. *Call*, 30 Maine, 10. "Unless the court should think it probable the new evidence would alter the verdict." *Snowman* v. *Wardwell*, 32 Maine, 275. "A review will never be granted to let in additional testimony, when such testimony would not be likely to change the result." *Todd* v. *Chipman*, 62 Maine, 189. "Nor unless there be reason to believe that it would change the result." *Trask* v. *Unity*, 74 Maine, 208. In *Linscott* v. *Orient Insurance Co.*, 88 Maine, 497, 51 Am. St. Rep. 435, the court stated the rule, citing various earlier cases, in these words: "It has long been the settled doctrine of this court that a new trial will not be granted on the ground of newly-discovered evidence, unless it seems to the court probable that it might alter the verdict." In *Stackpole* v. *Perkins*, 85 Maine, 298, nothing is said in the opinion in regard to the new evidence being of such a character as to require a different verdict. The court does say in that case:

"If believed (the newly-discovered witness) his testimony must substantially destroy the evidence of a witness at the trial, whose testimony may have been considered of controlling weight." A new trial was granted in this case, although the effect of the newly-discovered testimony was stated by the court to depend upon the weight given to it by the jury.

It is true that in *Linscott* v. *Orient Insurance Company*, supra, where the correct doctrine of this state was very distinctly stated as above quoted, and in accordance with the previous authorities, the court, at the conclusion of the opinion said that the question was, "whether the legitimate effect of such evidence would *require* a different verdict." The case of *State* v. *Stain*, 82 Maine, 472, was cited in support of this doctrine. But we do not find the rule so stated in any case, other than in these two, in this state. If it were true that such new evidence must be of such a character as to *require* a different verdict upon a new trial, then it would follow as a logical sequence that none but a different verdict would be allowed by the court to stand. The rule thus stated in these two cases is too strict, it would deprive a party of the privilege of having his new evidence passed upon by a jury, whose peculiar province it is to decide controverted issues of fact, even in cases where the court is of opinion that the new evidence would probably change the result, or that injustice would be likely to be done if a new trial was not granted.

In this case we can not say that the new evidence, in connection with the former evidence, would require a different verdict. After this evidence is submitted it then becomes a question for the jury to pass upon. But it does seem probable to the court that the verdict will be different when the case is submitted anew with the additional evidence.

It is true that this evidence is cumulative, but it is not an absolute and unqualified rule that a new trial will not be granted under any circumstances upon newly-discovered cumulative testimony. *Snowman* v. *Wardwell*, 32 Maine, 275. When the newly-discovered evidence is additional to some already in the case in support of the same proposition, the probability that such new evidence would change the result is generally very much lessened, so that much more evi-

dence, or evidence of much more value, will generally be required when such evidence is cumulative; but if the newly-discovered testimony, although merely cumulative, is of such a character as to make it seem probable to the court that, notwithstanding the same question has already been passed upon by the jury, a different result would be reached upon another trial with the new evidence, then such new trial should be granted.

The provision of the statute, R. S., c. 89, §4, applicable to petitions for review, that "newly-discovered cumulative evidence is admissible and shall have the same effect as other newly-discovered evidence," should have some effect upon the value of such testimony upon a motion for a new trial; otherwise, a party who had lost a verdict would have greater rights upon a petition for review after judgment than upon a motion for new trial before.

And after all, while it is important to have general rules in regard to the granting of new trials upon this ground, which may be known to the profession, and by which the court will be governed so far as practicable, each case differs so materially from every other, that the decision of the question as to whether or not a new trial should be granted in any particular case must necessarily depend, to a very large extent, but of course within the limits of such general rules, upon the sound discretion of the court, which will always be actuated by a desire, upon the one hand, to put an end to litigation when the parties have fairly had their day in court, and, upon the other, to prevent the likelihood of any injustice being done.

In the exercise of this discretion, and within the rules as above laid down, the court is of the opinion that this plaintiff should have the opportunity to again submit his case, with the additional testimony, to the determination of a jury.

*New trial granted.*